Good morning. This is the time for argument in our re-hearing on bank of case of Abati v. Alta Health & Life Insurance Company. We have on the phone with us Judges Reimer, Gould and Wardlaw. Are you judges present? Yes, this is Judge Wardlaw. Good. Here, I'm present. Yes, thank you. All right, we understand that counsel is ready to present their argument, and so counsel for the appellant may proceed. Good morning, Your Honors. Daniel Feinberg for Appellant from Abati. Appellant urges this Court to overturn the Atwood decision and adopt a judicial standard of review that's less deferential to conflicted fiduciaries. Adopting the Eleventh Circuit standard would accomplish three worthy goals. First, it would provide clear guidance to the District Courts regarding conflicts of interest. Second, it would promote judicial efficiency by increasing the benefit cases. And third, it would level the playing field between participants and insurance companies. The three-part test in the Eleventh Circuit's Brown decision is the best standard among the circuits. Where a fiduciary acts under a conflict of interest, accounts for this conflict of interest by first reviewing the claim decision de novo. Second, if the claim decision was correct, it stands. However, if the Court decides that the claim decision was wrong, the conflicted fiduciary is given the opportunity to come forward with evidence showing that its conflict of interest did not affect its claim decision. And then finally, if the claim fiduciary fulfills this burden, the Court will uphold the claim denial, even though the Court would have reached a different result upon its own de novo review. What triggers this non-deferential review? What triggers this non-deferential review? What's required to trigger this non-deferential review? Is it any time you have a fiduciary that is actually a plan administrator as well? No, Your Honor. It would be a situation where the claim fiduciary has a financial interest in the outcome of the decision. There are many plan administrators who are independent. For example, there are many independent companies that are hired to administer pension plans or other kinds of benefit plans that are funded by a trust or by the sponsoring employer. Likewise, there are also situations where you have... I understand the distinction. So, in all cases where you don't have an independent administrator, in your view, you're putting this non-deferential review. Exactly. The one you're about to discuss that the Eleventh Circuit has adopted. That's right, Your Honor. Okay. Please go ahead. Our starting point today is the ERISA statute itself. ERISA imposes a duty of loyalty upon all plan fiduciaries, including the fiduciaries who decide benefit claims. This duty of loyalty requires that the fiduciary act for the exclusive benefit of the plan participants and not in its own interest. At the same time, however, ERISA permits insurance companies and other parties with a financial interest in claim decisions to act as plan fiduciaries. The statute does not give us any guidance for reconciling these two provisions, nor does the statute give us any clear guidance on the appropriate judicial standard of review. Excuse me. Yes. I guess I have two questions. One is, it seems to me that adopting the Eleventh Circuit test in Brown would require us to set aside a very great deal of circuit law that's developed over quite a few years, and that would create a lot of uncertainty and require a lot of policy changes, wording changes by insurance companies. And the second is, I wonder why we need to do it under Firestone, the Supreme Court decision, and Kerney, our en banc decision. The conferring of discretion has to be unambiguous, and a lot of insurance policies say that the administrator has discretion. This one doesn't. So I wonder if it isn't just a whole lot simpler to avoid the standard of review issue, say that there is no unambiguous control of discretion in Firestone, the Supreme Court decision required consistently with our previous decisions, and then just go from there. Judge Kleinfeld, you do make a good point in that in the Kerney decision the last time, actually, when the court set en banc for an ERISA matter, the court directed plan sponsors to have very clear and unambiguous language in a plan document if they intended a fiduciary to have a discretionary authority. This plan document has rather muddled language. It's a close call based on Ninth Circuit precedents, whether it's sufficient. Some circuits have sort of taken the approach, including the Seventh Circuit and the Herzberg decision, saying that there's safe harbor language out there for plan sponsors to use if they really want to have a grant of discretionary authority, and that language basically echoes what's in the Firestone decision. Once you say it's muddled, isn't that the end of the story under Firestone and Kerney? If it's muddled, it's de novo review, and you never get any discussion or analysis of whether they abused their discretion or had a conflict of interest. Your Honor, that's one option in this case. There are some Ninth Circuit cases which have looked at muddled language and found them to be good enough to have a grant of discretionary authority, so the Court would have to clarify that a plan sponsor needs to really include this safe harbor language as a grant of discretion is intended. If you think to follow up, I just wanted to follow up on the other circuits' positions. Where are the other circuits on this? Regarding the judicial standard of review. Given the ground, closer to ground or closer to heaven? Well, it's interesting, Your Honor. The majority view among the circuits is what's known as the sliding scale test, and why that is an interesting point today is that neither side in the courtroom today likes the sliding scale test. The reason why we don't like it is actually there's one point where we have agreement, I think, on both sides. It doesn't really provide any clear guidance to the district court about how to deal with conflicts of interest or recognize what a conflict of interest truly is. It's really beyond the human capacity to have a level of judicial scrutiny that's calibrated from 1 to 100 based upon the perceived seriousness of a conflict. It's really no guidance whatsoever, and the courts that have adopted the sliding scale test have themselves expressed dissatisfaction with it. Almost every circuit that uses the sliding scale test has at one point or another said, what are we doing here? The reason why a number of circuits have adopted the sliding scale test is the fact that in the Firestone decision itself, the Supreme Court said that you must weigh any conflict of interest in setting the appropriate standard of judicial review. Now, the courts have focused on this one word, weigh, and said, oh, that means that they intended a scale metaphor, because that's how you weigh things. I think that if you look at more recent pronouncements by the Supreme Court, you'll realize that the courts are focusing too much on that one word. You might say they're putting too much weight on weigh. And the reason why I say this is if you look at the Pegram case, which is from 2000, the Supreme Court said that financial conflicts of interest necessarily compromise the fiduciary function. And then in the Rush Prudential case from 2002, which is the court's most recent stab at this issue, the court said in a footnote that it's a fair question how much deference a court can grant to a conflicted fiduciary where the judicial eye is peeled for conflict. Counsel, doesn't your argument go beyond Brown? Wasn't Brown limited to the facts of that case where you had an insurance company administering its own policy? Your Honor, Brown has not been interpreted that narrowly by the Eleventh Circuit. The Eleventh Circuit will apply the Brown standard to any ERISA benefit claim case involving a conflicted fiduciary. Now, it's true that the most common circumstance where we see this arise is in the case of an insurance company that's paying benefits out of its own pockets. So most of the cases do involve an insurance company, but it applies much more broadly than that. Would you explain in the context of this case how the – how you see the result differing here depending on whether the Brown approach is used or the Atwood approach? Yes, Your Honor. Under the Atwood approach, it's up to the planned participant to prove or at least present evidence tending to show that a conflict of interest affected the claim decision. So the burden of showing the conflict is on the participant. And, of course, the participant doesn't have ready access to any of the relevant information. Under the Brown test, it's simply shifting the burden of proof. It's the insurance company that has the financial conflict of interest that has to show that its decision was not tainted by its own conflict of interest. And it's really starkly drawn, I think, by the differences between the panel majority opinion and Judge Progerson's dissenting opinion, where basically the panel majority was willing to take the insurance company at its word and say, yes, they did the right thing, while Judge Progerson asked probing questions that showed that there were some problems here. And there's even some problems that don't appear in the dissenting opinion. For example, throughout this case, Alta has steadfastly maintained that there are absolutely no documents in its own records indicating that Dr. Abatey submitted a waiver of premium after he became disabled. However, right before trial, Alta produced a roster. It was a census of covered employees from May 1997. And that roster includes Dr. Abatey and shows his life insurance coverage in the amount that's claimed here. Sotomayor, if we were to agree with you, would we not have to remand to the district court? As I understand it, the district court's position was there's evidence going both ways on the waiver of premium, and if I'm using an abuse of discretion standard, he says, I don't have to decide because there's evidence to support what the insurance company did. So if we agreed with you, wouldn't we remand it for further proceedings? Yes, Your Honor. You would remand the case for the district court to use a new standard of judicial review, which I think in this case would be much less deferential to Alta. But take that one step beyond the question you just got from Judge Kraber. What happens on remand? Isn't it going to be precisely what has already occurred? No, Your Honor. First of all, after it's remanded, the district court will probably base its decision on the administrative record, but here there's a reason why it may want to go beyond the administrative record, which is that in its final denial letter, Alta raised a new reason for denying the claim and never provided Dr. Abatey's widow with an opportunity to rebut this. In other words, only in its very last denial did Alta say, oh, by the way, we think Dr. Abatey was not disabled for 18 of the 20 months preceding his death from lymphoma. And ---- Well, isn't that a second issue? Yes. The key issue here, what you're asking us to do is to drop the Atwood test and adopt the Brown test. And if we do that with respect to the dispositive question of whether or not this form was actually filed, the evidence isn't going to change. And even with the Brown standard, what's the trial court going to do? Well, Your Honor, I think we can look to the Kearney decision for guidance on that. And Kearney tells us that in cases where there's evidence going both ways, such that summary judgment is not appropriate, then the court will conduct what's become known as a Kearney trial and essentially review the administrative record. Now, it will also have the discretion to bring in some new evidence. And this is the unusual case where I think that might be helpful because of the fact that the plaintiff got sandbagged by a new reason for denying the claim. But in most cases, the court is simply going to conduct the Kearney trial by reviewing the administrative record once again, and this time deciding who's right based on a trial standard rather than a summary judgment standard. And for this reason, we think that the approach we're advocating is actually going to make the judicial burden much lighter in these cases. Because But wouldn't that change also if we were to determine that the policy language is not explicit enough and there were de novo review, that would change the whole landscape in the district court's determination, correct? Yes, Your Honor. If the court decides that there's not a valid grant of discretion, then the remand would once again be for de novo review. The district court would have the discretion under Mongeluzzo to admit additional evidence beyond the administrative record. But then at the end of the day, the court's simply going to review the administrative record and perhaps this new evidence, and without hearing live testimony in most cases, render a decision, and it's just going to be not under the summary judgment standard, it's going to be under. Is there evidence out there that we know about but which was not admissible or were not admitted in the first trial? Yes, Your Honor. Because Alt had produced this 1997 census report showing Dr. Abatey's continued life insurance coverage on the eve of trial, plaintiff never had the opportunity to make that part of the administrative record. Now, in May 1997, we're all in agreement that Dr. Abatey was not an active employee. He had stopped working at the medical clinic in 1992. And so he had not – we're also in agreement that he didn't pay retiree premiums. So the only reason why he would be listed as covered under the policy as of May 1997 is if he had submitted the waiver of premium. Now, that's obviously indirect evidence, but it is evidence in Alta's own files of the fact that the paperwork was taken care of. What would happen if it were to go back for trial, but because of the failure to consider all the evidence with respect to the waiver of premiums, the district court had that, but it had it under an abuse of discretion standard. And then the district court decided again that there was no abuse of discretion. You would still have the second issue, which was the alternative finding. Is there anything akin to harmless error, whereas if the district court were correct on the first issue, the second issue wouldn't matter? Well, I suppose where there's alternative reasons for granting judgment, the court can obviously uphold that finding on any grounds. But I think it's really stretching it to refer to that as harmless error, where a participant has been sandbagged by a new reason for denying the claim and not given any opportunity to submit her own evidence in rebuttal. That can't be harmless error. In fact, the Fifth Circuit dealt with this same issue just 10 days ago. It's the Martin v. Aetna case. I don't have a cite for you because it really is fresh off the presses. But it's from about 10 days ago. And in that case, the Fifth Circuit had the same situation. The insurance company, in this case Aetna, raised a new reason for denying the claim at the request for review stage. And Mr. Martin did not have any opportunity to put in his own evidence into the administrative record. And the Fifth Circuit says that can't go, that is not acceptable, and that is something that requires reversal. So wouldn't it be possible to have the second reason not stand for the reasons you just gave, but that the first reason would be reviewed for an abuse of discretion, and that one does justify the decision? Your Honor, I don't think you can have a hybrid standard of review. If there's been some problem caused either by the conflict of interest itself, which, of course, is the test we're proposing under Brown, or by that conflict of interest causing a breach of fiduciary duty under the current Atwood test, once you make the appropriate finding, the court has to review the entire case de novo. You simply can't say they breached their fiduciary duty on one issue but not on the other, so we're going to cut them some slack. Obviously, once a fiduciary has breached his or her duty, they don't get any deference from the court. Well, maybe the problem is just by treating what is essentially a procedural error as a breach of fiduciary duty. If you have an independent plan administrator who did exactly the same thing, came up with a reason at the last minute that the applicant didn't have a chance to produce evidence, we still say that's an abuse of discretion, but obviously not proof of breach of fiduciary duty. So why isn't it better to treat or more appropriate to treat this problem, the problem of the new reason, not as a breach of fiduciary duty, but just as one of those things that trials of fact or administrators sometimes make some mistakes about and just a procedural error? And then we go with what Judge Silberman suggested as the first reason, which is not an abuse of discretion. Your Honor, it can't be a mere procedural error where a plan participant is not given the opportunity to rebut a reason for denying his or her claim. Why not? Because ERISA Section 503 says that the plan participant is entitled to full and fair review of any claim denial. And if the statute tells us that full and fair review is required in the Department of Labor, it has claim regulations that spell that out in some more detail. Obviously, getting sandbagged can't fall under the heading full and fair review. I understand that. I mean, it may not be full and fair review, but that's a long way from saying it's a breach of fiduciary duty. And we get stuff like this happening in immigration cases all the time, and nobody claims that the IJs have breached fiduciary duty or in Social Security cases all the time. It's just procedural irregularity or even due process sometimes. We claim a valid due process. But it's nothing more than a mistake. It's not some proof of perfidy. Your Honor, I guess I would take things back to the common law of trust and the fiduciary duty spelled out in the common law of trust and also spelled out in the ERISA statute itself. It's often been mentioned as the highest standard of conduct known to the law. And so where a claim fiduciary duty is. I understand that. But somebody who has the highest duty can make a mistake just as well as breach fiduciary duty. I mean, there are two different things. I mean, you could be acting in good faith. You could be trying to perform your or discharge your fiduciary duty and just blow it, you know, just make a mistake. Is that not a possibility? I disagree, Your Honor, because the fiduciary duties include the duty of prudence, which is spelled out in ERISA as acting in a manner that a person who is expert in this area would carry out his or her duties. So you can't make mistakes very easily under ERISA and say, sorry, because So what if this were an independent, according to your own definition, somebody who was an independent plan administrator and therefore not subject to this standard which is applicable sometimes to self-dealing? What happened in that situation? Under the Brown test, Your Honor, the court would review the claim denial and decide whether it was right or wrong. Now, here, if you're Well, I guess let me understand that. You still have an independent plan administrator who is still a fiduciary, right? The only reason we don't view him suspicious is because there's no self-dealing involved. And then this independent plan administrator goes ahead and makes exactly the kind of mistake you're talking about. They bring in a reason at the last minute that they should have given the applicant the chance to dispute. Is that then a breach of fiduciary duty, too? Your Honor, under the Brown standard, the court would simply decide if that denial was reasonable. I'm assuming in your hypothetical that the court has decided that the claim denial was wrong. But the next step in the Brown test is, assuming there's no conflict of interest, which there isn't in your hypothetical, if it's reasonable, then that fiduciary, independent fiduciary, is entitled to the abuse of discretion standard of review, which is going to be much more tolerant of that kind of situation. Counsel, let's say it's de novo for purposes of my question. I wonder, even under a de novo standard, how Dr. Abadi's widow can recover. The reason that I wonder that is that the policy requires for a waiver of premiums that the administrator receive proof of the total disability within 12 months of the date when the person became totally disabled, the proof has to be sent to the home office. The evidence indicates, as I understand it, that while there is no evidence that any proof was sent to the home office, there is some evidence that there was a telephone discussion between a person at Dr. Abadi's medical group and a person, Roberta Kay, at the home office, and that a form for requesting a waiver of premium was sent to the medical group. The insurance company sent it to the medical group. And the evidence is that the person in charge of benefits at Dr. Abadi's medical group never filled it out and sent it back within the 12 months. That would suggest that Dr. Abadi's widow's remedy is against the medical group comprehensive liability policy, I suppose, rather than the life insurance policy. Your Honor, the record shows that the medical clinic sent the form to Dr. Abadi, and the indirect evidence, which is notations that's in the Human Resources Department's records, show that that written request was sent to Home Life Insurance, which was the insurance company at the time. And then there's notations, and that was done in January 1994, according to the notations. And then there's a notation. No, it's not, Your Honor. Dr. Abadi left work. No, that's not when his disability commenced. He left work in November 1992. At that point, he and his doctors were optimistic that he would return to work by the summer of 1993. There's a number of forms in the file relating to his disability claim where the doctors said we're hoping that he can come back by the summer of 93. Unfortunately, after the chemotherapy, it became clear that he was not going to recover sufficiently to return to work. It wasn't until the summer of 93 that they realized that he was totally disabled. And so the forms were sent in in January 94. There was approval from Home Life, which was received in February 94. And then his name stays on the roster until at least 1997. So with your permission, Your Honors, I'd like to reserve the remainder of my time for rebuttal. Thank you. May it please the Court, I'm Dan Lindahl. At counsel table with me is Waldemar Flepsen, my co-counsel, who will also address the Court today. The issues in this ERISA case fall into two general categories. First are the issues specific to this particular dispute between the plaintiff and Alta. I'll address those questions, including the choice and application of the standard of review in this case. And then there is the new issue in this case raised by this Court's order calling for supplemental briefing. The question whether this Court should overrule Atwood and adopt a new methodology for taking into account the apparent conflict of a claims administrator who has a financial interest in the decision. I want to begin by addressing the issue that has consumed most of the briefing and most of the panel's decision. Which is whether there is any material probative evidence that a conflict of interest affected Alta's decision in this case. Mr. Lindahl, let me ask you a question about that. The second denial letter, the one dated June 6, 2002. Yes, Your Honor. I'm referring to page 9 of the letter. The letter says, because Home Life and Anthem did not receive notice of the Abati claim, Alta never received any reserves to fund that claim. Thus, Alta faces potential liability on the Abati claim solely because it was not properly reported. It seems to me this is a smoking gun of a confession that Alta was taking into account its own liability and its lack of reserves in deciding how to process this claim. I mean, what could be a more blatant confession than this? I guess I'm not sure I understand your question. It says one of the reasons it's not going to pay the claim is because they didn't get the reserves from the predecessor company and it would be unfair for it to have to meet the liability without having gotten the reserves. I mean, it's looking to its own interest, isn't it, when it says that? Well, the point, of course, Your Honor, is that as part of this transaction, Alta received a list of waiver of premium continuance and Dr. Abati was not among them. Had Dr. Abati been among them, there would have been a reserve transferred. And at this end, the plaintiff at that time was arguing that Alta had suffered no prejudice as a result of the failure to give notice, and this would be an aspect of the prejudice that Alta experienced as a result of Dr. Abati's failure to comply with the 12-month waiver of premium requirement. So if I may follow up on Judge Silverman's question. If that was the case, why didn't you cover Mr. or Ms. Abati's claim and sue the party from which he purchased the company? Because the policy didn't provide coverage. As suggested earlier, perhaps Ms. Abati's remedy is against the clinic's errors and omissions carrier, which in fact that claim was made, and after that claim was denied, then Ms. Abati brought this lawsuit against the insurance company, attempting to prove that a waiver of premium application had been submitted, notwithstanding the fact that both the clinic and the broker admitted it had not. Now, with respect to whether there's material probative evidence of a conflict of interest, there are two points the plaintiff has emphasized. One is, which we've heard quite a bit about here in Appellant's opening remarks, is the so-called sandbagging, this new issue that was allegedly raised in the decision at the appellate review stage of the administrative review. Now, what's interesting about that is this. The plan, of course, required, in order for benefits to be payable, the policy required proof that Dr. Abati had remained disabled totally and continuously until death. That was not unknown to the claimant. And the claimant had the information upon which Alta relied. This was not an instance where Alta made a decision based on evidence that was not in possession and not known to the plaintiff. In fact, the plaintiff had all of the medical records upon which Alta relied, including the report of Dr. Karacousis, who opined that Dr. Abati had a time when he was not disabled. And so then what happened when Alta issued that decision? Plaintiff's counsel in August of 2002 wrote a long letter identifying his, what he perceived to be the errors in that. He did not, however, tellingly say, oh, by the way, this issue is new to us. We've never heard this. We didn't know this was part of the case. Nor did he say, oh, we now understand this is part of it. We want to supplement the record with additional medical information. Neither of those things happened, which undercut the plaintiff's contention that this was some sort of new issue that he didn't anticipate. By what right did they come up with additional information when the letter starts off that this is the final determination? Well, Your Honor, they're the ones saying that they, I mean, Mr. Feinberg just said, if we can go back and get de novo review, we want to supplement the record to meet this contention. So if they thought they needed to put in supplemental information, they should have suggested that. It seems that now they are saying something they didn't say at the time. Could it be fair to say that when the final denial came, you didn't invite any supplemental information? No, we did not invite any additional information, and they didn't offer any. Now, another interesting point that the majority decision makes is that the majority of the decision is unbalanced against you. I mean, what's the point of saying this is the final decision? Well, Your Honor, my point is this. Okay. Then we're only holding it against them because they said one thing then, and they're now trying to convince you of something else now. I don't think they said anything. Why don't you answer my question? I'm sorry, though. I need to hear your question. You say this is a final decision, right? Yes. Okay. When we say it's a final decision, we don't expect you to talk back. This is the end of it now. Okay. I don't understand why the State, if you talk back to a final decision, counts against them. I mean, what are we supposed to talk back to? Because you said this is our final word. Because they did talk back, Your Honor. They talked back at length. But one of the things they didn't say was this is a new issue to us. And now they're saying it is a new issue to us. Well, whether they said it or not, wasn't it a new issue? I mean, just plainly from the face of the documents, it was a reason that had not been relied on previously. Yes. It was an additional reason that was not. So the fact that they didn't say it doesn't make it not so. Well, the decision at the appellate review stage included a reason that was not articulated at the initial stage. But their point is that this shows that you were affected by a conflict of interest. Now the ---- I take their point as being, alternatively, that as a separate issue, as a completely separate issue, apart from the standard of review, even if we agree with you on the standard of review, I understand their position to be, whatever the standard of review, when you get to a new reason for denial that the participant has not had an opportunity to present evidence to rebut, that that warrants a remand for development of the facts, regardless of the standard of review. And I may be misunderstanding their argument, but it seems to me that they are making an alternative argument that is freestanding. And I'd like to understand your response to that freestanding argument. I don't understand their argument to be that. I understand their argument to be ---- Well, make it my question, then. What would your response to be to that proposed method of looking at the new issue question? Okay. Well, first of all, there's nothing wrong. There's nothing in the statute. There's nothing in the regulations. There's nothing in the case law that says at the administrative appellate review stage, the administrator may not identify reasons in addition to the reasons that were set out at the initial level. Is there anything in the statute, regulations, case law, or common logic that would require the participant in that event to have an opportunity to respond on the merits of those new reasons? Well, the claimant knew that this was a requirement to get coverage and knew what the record was. And, Your Honor, where this has arisen, I'm not aware of any case where this has arisen in the administrative review process. The cases that the plaintiff has cited is where in litigation a new issue is, a new basis is, for denying the claim is asserted. And in those cases, the cases cited by the plaintiff, the court simply says we're not going to consider that. Sort of going back to what Judge Kaczynski suggested earlier, perhaps not everything that happens in an ERISA case is in a conflict of interest or a breach of fiduciary duty or motivated by financial interests. Maybe sometimes you can just say we're not going to consider that. We'll consider the other issue that is on the table. Counsel, this is Judge Gould. Could you go back to the standard? Why do you think the Atwood Rule is superior to, say, the Third Circuit's approach in PINTA? Well, the reason we believe the Atwood Rule is superior is the same reason that the Atwood Rule is superior, which is that how does one know, how does a district judge know, how does a claims administrator know, how does a party know what on any given facts are going to cause a lesser deference and to what extent the lesser deference means? As one of the cases says, judges understand deferential review and non-deferential review, but this middle ground of grayness on a spectrum from 0 to 100 is almost standardless. I'd like to follow up on Judge Gould's question. And there's something that's always puzzled me about ERISA and the deferential standard of review when we're dealing with decisions made by an interested entity, as an insurance company necessarily is. This is, say, an insurance company paying benefits out of its own funds. I don't see why we don't assume what's obviously to be true, and that is to say there is a built-in conflict of interest, and once we do that, we treat this as if this were an ordinary insurance company, which is essentially what Brown is doing. Why is that wrong? Why is Brown wrong? I'm not PICO now, but Brown. Your Honor, with your leave, since that's Mr. Flepson's area, I would be happy to do that. I'll wait for him. I'm sorry. I'm halfway through my time. Are there any more questions for you on what's your answer? To this particular, the circumstances here, in reference to Judge Kleinfeld's question at the outset, did this plan here grant unambiguously discretion? Well, it did. Counsel referred to it as muddled. It doesn't say we grant you discretionary authority. Those words aren't in there. What's interesting, of course, is that while the dissent at the panel level found a lot to criticize, that wasn't one of the points. He, even Judge Pregerson, agreed, apparently. He didn't say that it did confer discretion, but he sure didn't say it didn't. And that's probably because there are a number of cases where Burke, Ben Dixon, you know, Judge, even Atwood, which was Judge Pregerson's case, he was on that panel, Jordan, all where something other than, you know, discretion, discretionary authority wording is used. Well, Jordan uses the word discretion, actually. Well. And says that Travelers has the discretion to construe and interpret. Jordan says at 72, Travelers has the discretion to construe and interpret the terms of the plan and the authority and responsibility to make factual determinations. In this case. You've got the part after the end, but not the part before the end in your policy. Right. In this case involves factual determinations. This Abadi case, we're not, there's no construing of the, nobody disagrees about what this plan means. The nice thing about, we've got, we've got several cases where we said the plan, where the plan had the phrase discretion in it. It said that the insurance company has the discretion, and we said that unambiguously confers discretion. So obviously some insurance companies write their policies that way. If the insurance policy says Travelers has the discretion and authority and responsibility, that strikes me as different from saying the insurance company has the authority and responsibility because it leaves out the part before the end, the express conferral of discretion. Why doesn't that matter? Well, I have to differ a little bit on your reading of Jordan because you have two different clauses there. One dealing with the interpretation and construction of the plan. Another dealing with factual determinations. And the discretion, the word discretion doesn't relate to the factual determination. Setting aside Jordan, the word discretion doesn't appear in Burt, doesn't appear in Sandi. Obviously the Court said you don't have to have the word discretion. We're looking at whether, in sum or substance, the plan confers power, authority, discretion to make these decisions. And, Mr. Honor. If you're done on that question, before you leave the podium, would you respond to the point made by Mr. Feinberg about this additional evidence about the Dr. Avedis being listed as cover? First of all, what's the background of that and to what extent is it relevant at this point? That's interesting because that piece of evidence actually undercuts the plaintiff's claim rather than helping it. It is a – first of all, it is – It was never – it's not in the record. It is in the record. Oh, is it? Oh, okay. I can identify – No, that's fine. All right. It's in the record. At the end – I believe it's the very last document of plaintiff's excerpt of records, second volume. It's at the very end. It's a roster of names. Okay. But it was before the Court. Correct. All right. Correct. It was before the Court. It's a roster of names. We know very little about it. It's in the record. It's a roster of names. It appears to be people who are insured. And Dr. Avedis' name is listed right there along with all kinds of other active employees at the medical clinic. Dr. Abadi wasn't active in 1997. That roster is erroneous, that roster which the depositions – the deposition testimony establishes that the way these rosters were prepared was that the clinic would go through and prepare a roster of who's an active employee. Apparently, the hospital must have thought Dr. Abadi was an active employee, which means they did not send in the waiver of premium application that the plaintiff says they did. Counselor, isn't this an argument for the trier of fact under a de novo standard? Because what the district court here did, even though there was a bench trial, the court said, I don't have to resolve this conflicting evidence because all I have to do is determine that there was no abuse of discretion. And if there's evidence both ways, then whatever they did was okay. But if there's a de novo standard, then the argument you made would be an argument for the trier of fact as to the proper inference to be drawn from all the evidence. So why isn't that something that the district court should have to resolve as a factual matter? On a de novo standard, I believe it is. Let me – I was going to ask, do you want to defer to your co-counsel? I do, unless there are other questions that I can address. Good morning, Your Honors. Waldemar Flepsen for Alta Health. Before turning to the precise question as to why it should not be preferred to the Atwood standard, nor, in fact, any other standard that's been adopted by any other circuit, I think it's helpful to take a step back and start, really, with a reminder as to what Congress set out to do in passing ERISA. Now, Mr. Feinberg ably pointed out at the outset of his argument that Congress imposed fiduciary obligations for the benefit of participants and beneficiaries. And, obviously, the protection of participants' and beneficiaries' rights was an important aspect of what Congress was setting out to do. However, as the Supreme Court has reminded the courts and the parties multiple, multiple times, there were competing interests that Congress sought to balance in establishing ERISA. And those interests included, very importantly, the interests of plan sponsors and employers for the purposes of promoting the formation of plans and the funding of plan benefits. For the courts have recognized that Congress understood that without the formation of plans and the funding of the plan benefits in the first place, which is entirely voluntary under federal law, there would be no benefits to which a participant or beneficiary would be entitled. Now, by most accounts, 30-plus years after the passage of ERISA, the balance of those competing interests has worked well. Currently, according to the Department of Labor Statistics, over 130 million participants and beneficiaries are covered by ERISA health plans. Of that 130 million-plus, approximately 70 million are covered by self-insured plans, the remainder covered by insured plans. Now, there are a few other continuing legislative and regulatory issues that as well bear upon the setting in which this court finds itself in considering whether to adopt a different standard of review. Most importantly, the Department of Labor in 2002 put in place new claims review procedures and processes. Those are very strict. They're a tightening up of what was in place previously, what was in place indeed at the time of the events in this case. Now, those have been in place for just a few years and have not worked their way through the courts as of yet. Are you arguing in some way that those are inconsistent or override Brown? I don't see the relevance yet. No, Your Honor. I'm just pointing out that since the facts in this case and since the developments in this case, there are continuing developments with respect to protecting the interests of beneficiaries and participants, one of which being the Department of Labor's rules and regulations. Yeah, I don't see the relevance. Okay. Perhaps more direct relevance in this circuit and in this state is recently the California Department of Insurance has revoked its approval of disability insurance policies that provide for discretionary review of benefits claims. Now, those issues are currently working their way through the lower courts, as this panel understands, as a number of the judges have sat on panels which have remanded those issues to the lower courts. You know, your time is running. Let me ask the Brown question again then. Why shouldn't we adopt the Brown standard, which seems to me simply to recognize the obvious, that is to say if we have an insurance company that is a self-interested plan administrator, why should they be protected as if there were no built-in conflict of interest? Well, at the time ERISA was passed, most plan benefits were paid through insured plans. Yet at that point in time, Congress did not impose such a standard. And, in fact, we have to go to Firestone to understand what standard was imposed at the time. In fact, at the time ERISA was passed, the default standard was an arbitrary and capricious standard of review. Now, what Firestone held was that in the event, however, a plan was silent as to what standard of review was to be provided, the default rule would henceforth be a de novo standard of review. But the Court was very clear, however, that as well the plan sponsor would be able to, in the plan, provide for an abuse of discretion standard. Now, in the Firestone case, interestingly, and I think this is directly responsive to this point, the Department of Labor argued for a de novo standard of review whenever the plan administrator had an economic interest. And the Department of Labor asked the Supreme Court to consider in its ruling the alleged impartiality of the plan administrator. Now, Brown was decided in 1990. Are you saying that Brown is inconsistent with Firestone and the Supreme Court has simply let it slide for 16 years? Brown is inconsistent with the dictates of Firestone. It is also inconsistent with the dictates of ERISA. In fact, in this issue, in this area, which is interesting because what it comes down to is an issue of common law under ERISA. What the Supreme Court has allowed to happen is proliferation of standards where it's virtually the case that no two circuits follow the same rule. So it becomes problematic to say or to suggest that any particular standard must be right or wrong based on the fact that the Supreme Court has not to date decided to resolve which of the standards. So another standard is appropriate. I'd like to hear comments on footnote 15 in Rush Prudential, HMO v. Moran. It can't be read to suggest that even the potential for conflict of interest when the person making the decision or the entity is the same as the one paying, that is, that there's that kind of inherent conflict that Judge Fletcher has asked you about, that that is a type of conflict of interest. Is that a fair or an unfair reading of the hint that the Supreme Court is dropping there? Well, I won't pretend to know what type of hint that they were dropping. I don't believe they were addressing this issue. Clearly, what the Supreme Court has allowed is for a financially interested fiduciary, and this is squarely provided for under specific provisions in ERISA, that a financially interested fiduciary may wear two hats and may act under any of ERISA's provisions as a fiduciary without any presumption that they are doing something inherently wrong. And interestingly, the general fiduciary obligations that ERISA imposes, such as prudence, duty of loyalty, obligation to act in accordance with planned documents, for all of those fiduciary breaches, what standard of proof have the courts applied? The traditional burden of proof is on the plaintiff who claims any of those fiduciary provisions have been breached by a potentially conflicted fiduciary even, that the plaintiff has been approximately caused by that breach. And that's precisely what this Court is doing in its Atwood test. Counsel, do you agree with opposing counsel that the holding of Brown goes beyond the specific facts of that case where an insurance company was administering its own policy? It certainly does, and that's one of the problems with Brown. Brown has been applied to any situation in the Eleventh Circuit where the plan or claims fiduciary is financially interested. And I beg to differ with Mr. Feinberg with respect to how many plans that affects. First of all, it affects all insured plans. But let's look at the non-insured plans, the self-funded plans. Well, those plans have a much more direct potential financial conflict where the plan administrator is an appointed member of the plan sponsor or, again, wearing two hats. The plan sponsor is also the plan administrator, which is something that's allowed. And that is the most usual case which is found. And in those cases, when the plan administrator is deciding whether to pay benefits to that plan's employees, the savings on those determinations go directly to that employer's bottom line. So, indeed, the potential financial conflict that Brown talks about in this case and that Brown talks about would extend to virtually all plans except fully funded plans. And, of course, as we know, on the welfare benefits or health benefits side, there are virtually no funded or fully funded plans. In fact, the only fully funded health benefit plans arise in the context of collectively bargained plans where an employer has to, as an obligation under a collective bargaining agreement, fund those plans. Generally, however, such plans are unfunded on the welfare benefits side. The discussion so far has been bookended by Atwood and Brown. Could you comment on FOT, which has a slightly different take from the other sliding scale circuits? Well, I think FOT is certainly well-meaning. It points out the extreme difficulty in applying a sliding scale test. However, ultimately, it fails to acknowledge that, indeed, ERISA allows for potentially financially interested fiduciaries to perform fiduciary obligations without a presumption of breach of a fiduciary obligation. It also fails to, I believe, and I agree with Mr. Feinberg in that respect, fails to provide meaningful standards for a court to review. But ultimately, the difference, the critical difference between Brown and Atwood and why claims fiduciary is presumptively void. And now, how does it reach that presumption? There's two things that it presumes to reach that. First is that a conflict exists merely by the status of who the claims fiduciary is. And secondly, merely because of that status, Brown presumes that there was a breach or an abuse of discretion by that conflicted fiduciary. Now, that presumptively void test has been rejected by most circuits. By presumptively void, do you mean de novo review assumes that something is presumptively void? In Brown, it does, because Brown is a six-part test. And I won't go to Brown just as de novo review. It doesn't say presumptively void. No, Brown has been, in fact, I believe there is some language in Ninth Circuit decisions, but certainly in a number of decisions, Brown has been construed as creating a presumption of voidness. Now, with respect to the de novo review test, the most interesting thing about it is Brown requires potentially all three tests we're talking about be applied. First of all, it requires in every case the de novo test to be applied. And then after that, it requires the application of an abuse of discretion test. And I think the best place to find this description is in the case of Williams v. Bell South Telecommunications. That's at 373 F. 3rd, 1132. It's a 2004 case in the Eleventh Circuit. And finally, you'll see in that six-part test is that ultimately, at the end of the day, the court applies a sliding scale test. Counsel, your time has exploded, Your Honor. So the disadvantage of Brown is that the prosecutor is subject to three tests rather than one. That's it. Thank you. Thank you, Your Honors. A little bit of cleanup first. First of all, the case I cited in my opening, which was Alton Robinson v. Aetna Life, was published by the Fifth Circuit on March 14th. And opposing counsel said he was not aware of any case where a planned participant was sandbagged in the administrative review process, and the court found that to be unacceptable. Robinson is his case. Second of all, the excerpt of records cite for the 1997 census that we've discussed so much today is page 409. Now, counsel has told us that that roster is mistaken. That roster is the work product of Home Life Insurance, the original insurance company. It's not a hospital record, a medical clinic record. It is the insurance company's own record. And he tells us that it's a mistake for Dr. Aetna's name to show up there as an insured. Well, that is, in fact, a possible explanation. But we've also heard from also – It's just a list. I'm looking at it. I don't – it doesn't say anything to me at all. It shows $500,000 worth of life insurance coverage for him, Your Honor. I realize that, you know, reading a chart like this is a little tricky, but if you look at it carefully, you'll see that it shows that he's got dependent coverage and that he has life insurance coverage in the face amount of $500,000. Now, if the insurance company made a mistake about this, couldn't they also have made a mistake? I'm sorry. I mean, it says life. It says 500. I mean, what it doesn't say is what this thing is. It doesn't strike me as self-authenticating. I don't have to authenticate it. They produced it. They told us. No, no. In the sense of what this is, this is a proof of coverage, this is proof of sort of somebody's position of what claims were put in. I mean, I don't know what it is. The district court could take additional evidence on this, but it's – But doesn't this support Judge Graber's point that if this is to be considered, this has to go back to the district court? This is not something we can do. We agree with that, Your Honor. We agree. Now, as pointed out by opposing counsel, ERISA does permit a fiduciary to wear two hats. A party can both be a business entity and a fiduciary. But the key point is that ERISA only lets you wear one hat at a time. That point is made in both the Amex Cole case cited in our brief and the Pegram case cited in our brief. And the problem with the situation we have here now is I can't tell which hat the insurance company was wearing when they denied Ms. Abate's claim. Were they wearing their fiduciary hat or were they wearing their business hat? Because it sounds like they were very concerned about not having received reserves on this claim. That's not a fiduciary – that's not the way a fiduciary thinks. That's the way the insurance company operating as a business thinks. And so the way we should account for that inherent conflict of interest is to adopt the Brown test. Now, opposing counsel has referred to the Brown test as a presumptively void standard. But that's simply not true. De novo review does not presume anyone is right or wrong. Under the test we're advocating, Mrs. Abate and other plant participants would still have the traditional burden of proof when the Court does its initial de novo review. If she doesn't have sufficient evidence to prove her claim was wrongly decided, that's the stopping point. The Court would then decide that the defendant was entitled to judgment. But if she can come forward with evidence that the claim was decided wrong, then the Court should definitely give it greater scrutiny because of the inherent conflict of interest. Is it your position that we have to affirm the district court unless we adopt the Brown standard or something like it? No, Your Honor. Your Honor, our brief shows that even under the Atwood test, the panel decision was wrong. We've come forward with material probative evidence tending to show a breach of duty here. Now, the other point I'd like to make is one of vocabulary. Opposing counsel talks about potential conflicts of interest versus actual conflicts of interest. But this distinction is not recognized in the common law of trust, and the Supreme Court in Firestone directed us to look to the common law of trust. But they didn't follow the restatement. They flipped the restatement. And instead of applying the common law of trust, they really changed it. Your Honor, some commentators have noticed, have noted that the Supreme Court's take on trust law was a little bit idiosyncratic. The point is that under the common law of trust, if I have a financial conflict of interest, it's always a conflict of interest. I can't say, oh, it was only an apparent conflict of interest because I didn't do anything bad. I can't say it's only a minor conflict of interest because I have a big business and this dollar amount isn't very substantial. If I have a conflict of interest, the courts in equity would always intervene to protect the rights of beneficiaries. And we're not asking for anything terribly dramatic today. We're simply asking the courts to say to the insurance companies, yes, we will review your claim denial to make sure they were correct. That's a standard of review that we've had in insurance claim litigation for hundreds of years. We're not going to create any turmoil in the insurance industry by saying to the insurance companies that if you deny a claim, we just want to double check and make sure you're right. Certainly the Brown standard has been applied in the Eleventh Circuit now for going on close to 20 years. The Supreme Court, by the way, denied cert in Brown, so they didn't think it was a horrible mistake at the time. And we haven't read anything about people in southern states not having insurance or people in southern states not having employee benefits. The Eleventh Circuit has used the Brown test, used it successfully, and frankly employee benefits litigation is much simpler there than it is here. So I would say that the Brown test is a way of simplifying things for the litigants and also for the courts. By setting such clear rules for people to follow, we're not going to have a situation where arrest litigation gets front-loaded with discovery and motion practice, where we have to try to souse out a fiduciary's motives and have to spend so much time trying to find the conflict in the haystack. Instead, we're going to have the judge start off by reviewing the administrative record, which the judge has to do in any case. Counsel. Your time has expired. Sorry. I'll sit down. Thank you. Thank you. Thank you, counsel. That concludes the court's argument for this session. The Court stands adjourned.
judges: Schroeder, Kozinski, O'scannlain, Rymer, Kleinfeld, Silverman, Graber, McKeown, Wardlaw, W Fletcher, Gould, Paez, Rawlinson, Bybee, Callahan